UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER GRAFF and RICK DISNEY,<br><br>   Plaintiffs,<br><br>   v.<br><br>CITY OF TEHACHAPI, et al,<br><br>   Defendants. | 1:14-CV-00095-LJO-JLT<br><br>**ORDER ON MOTION TO DISMISS**<br>(Docs. 17) |

## I. INTRODUCTION

Plaintiffs Peter Graff ("Graff") and Rick Disney ("Disney") (collectively "Plaintiffs") bring this suit for violations of Cal. Lab. Code § 1102.5 and 42 U.S.C. §1983 against Defendants the City of Tehachapi ("City"), Jeff Kermode ("Kermode"), Kevan Emprey ("Emprey"), Scott Kecham ("Kecham"), Mike Christian ("Christian"), and Does 1-11 (collectively "Defendants"). *See* Doc. 14, Second Amended Complaint ("SAC"). Before the Court is Defendants' motion to dismiss the SAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons discussed herein, the Court GRANTS in part and DENIES in part Defendants' motion.

## II. BACKGROUND

### A.  Facts[1]

Graff has been satisfactorily employed as a patrol officer by the Tehachapi Police Department for over five years. Disney had been satisfactorily employed as a patrol officer by the Tehachapi Police

---

[1] The background facts are derived from the SAC. The Court accepts the factual allegations as true for purposes of this motion. *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009).

Department for over two years when he retired in March 2013.

In 2009, Graff reported to Sergeant Kevin Paille ("Sergeant Paille") that Sergeant Empey was falsifying timesheets. Sergeant Paille asked Graff and Disney to monitor the problem. In August 2010 Sergeant Paille brought the results of Graff and Disney's monitoring to the attention of the Chief of Police and subsequently reported back to Plaintiffs that the Chief of Police did not approve of the investigation. In June 2011, almost a year after the report was made to the Chief of Police, Sergent Empey confronted Disney regarding this issue.

In July 2010, the Plaintiffs attended a barbeque where Officer Ketchum was also present. At the barbeque, Officer Ketchum verbally and physically harassed Graff's wife, which led to a verbal altercation between Officer Ketchum and Graff. Graff reported Officer Ketchum's behavior to Sergeant Paille. Since the incident at the barbeque, Officer Ketchum rejected Graff's police reports as unsatisfactory. Graff believed Ketchum was rejecting his reports in retaliation for Graff reporting Ketchum's actions at the barbeque. Graff reported his suspicion of retaliation to Sergeant Paille.

In June 2011, there was a dispute between Graff and Officer Christian regarding Graff's work hours. The argument escalated to the point where Graff felt physically threatened. Later that day, Sergeant Empey questioned Graff regarding the incident with Officer Christian. Graff criticized Sergeant Empey's handling of Officers Ketchum and Christian's behavior. After the incident, Officer Christian submitted a memorandum recommending that Plaintiff Graff's employment be terminated on the grounds of insubordination. Later that month, Officer Christian again physically confronted Graff.

In September 2011, Disney reported to Chief of Police Kermode that Officer Ketchum served alcohol to underage members of the Police Explorer program. Disney also complained about the mishandling of the incident between Officer Ketchum and Graff. In response, Chief of Police Kermode appointed Sergeant Empey, who had also been present at the event where the minors were served alcohol but failed to report it, to investigate the incident. In 2012, Officer Kermode told Disney the matter had been investigated and the charge was without merit.

Throughout 2011, Graff and Disney had several verbal altercations with other members of the

police force. The subject of these altercations varied. Plaintiffs met with City Councilmember Smith to report the continued animosity between Plaintiffs and other members of the police force. In September 2011, Officer Disney sent an email to the Chief of Police as well as the City Manager complaining of a hostile work environment at the police department. In November 2011, Plaintiffs met with Councilmember Smith for a second time. Later that year, Officer Graff met with City Councilmember Vauchon and Mayor Grimse to discuss these complaints. Plaintiffs feel that they were retaliated against for speaking to the councilmen and mayor. In November 2011, Plaintiffs' partnership was terminated by the police force, which they believe is a result of these meetings.

In February 2012, Officer Christian listed Graff in a police report which claimed that Graff was responsible for a missing police radio. The police report was later "erased from the police report database." Doc. 14 at 8. It is unclear to the Court what is meant by erased but assumes that the report disappeared from the record. Graff was informed that only the Chief of Police could erase police reports. Doc. 14 at 8.

In April 2012, Disney responded to an emergency call, which required him to give medical care to an infant. Disney, through no fault of his own, was unable to save the infant. Disney was extremely upset and decided to take the rest of his shift off after arranging for Officer Arebalo to cover for him. On the day of the incident, Chief Kermode approved of Disney terminating his shift early. On May 7, 2012, however, Disney was notified that he was being investigated for leaving his shift after attending to the infant in April. He was also put on administrative leave, which led to the suspension of his badge, gun, and the use of his department vehicle.

In June 2012, Disney was informed that the police department had been overpaying him and would be withholding payments going forward. At some point in the first half of 2012, Disney was informed by Chief Kermode that he would not receive his five percent merit increase nor the extra pay due to him for serving as Field Training Officer.

In August 2012, Chief Kermode informed Disney that he was the subject of an internal affairs investigation for allegedly making false and/or disparaging statements about fellow officers.

In June 2012, Graff spoke with several Councilmembers regarding the conditions at police headquarters. Around that same time period, Chief Kermode gave a speech to a group of officers in which he instructed them not to speak to City Councilmembers or make any complaints about the department. Shortly thereafter, in July 2012, Graff's service vehicle was taken away, ostensibly because he was on injured-on-duty status. Other officers were routinely allowed to keep their service vehicles when they were on similar statuses. As a result, Graff was unable to transport his police dog for appropriate training and certification. In July 2012, Graff was also informed that he would not receive his five percent merit increase. Chief Kermode told Plaintiff Graff that his merit increase was being withheld until Graff made improvements; however, Chief Kermode never specified what those improvements were. In August 2012, the Chief of Police reassigned the directorship of the Reserve Officer Training Program from Plaintiff Graff to Officer Ketchum. The following month, Graff sent an email to the Chief of Police complaining about the removal of his patrol vehicle and being the subject of a frivolous investigation. In subsequent emails, Graff complained about other misconduct in the workplace and voiced his intent to continue speaking with City Council regarding his situation, as well as his intent to file a lawsuit. In December 2012, Graff was made the subject of an internal investigation.

**B. Procedural History**

On January 3, 2013 Disney and Graff filed a formal government tort claim with the City. The claim was rejected the following month.

On July 24, 2013, Plaintiffs filed a complaint in Kern County Superior Court alleging breach of contract and retaliation in violation of public policy against the City. On November 18, 2013, the Kern County Superior Court sustained the City's demurrer to Plaintiffs' complaint with leave to amend.

On December 23, 2014, Plaintiffs filed a first amended complaint against Defendants alleging (1) violation of Cal. Lab. Code § 1102.5; (2) violation of 42 U.S.C. § 1983; and (3) penalties under the Private Attorney General Act, Cal. Gov. Code § 2698, *et seq*. Defendants removed this action to this court on January 22, 2014 on the basis of federal question jurisdiction over Plaintiffs' §1983 claim.

Doc. 1.

Defendants filed a motion to dismiss Plaintiff's first amended complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) on January 29, 2014. Doc. 6. Plaintiffs filed an opposition on February 20, 2014, and Defendants filed a reply on February 27, 2014. Docs. 10 and 11. On March 10, 2014, this Court dismissed Plaintiffs' claims in part and gave Plaintiffs leave to amend. Doc. 13. On March 31, 2014 Plaintiffs filed their second amended complaint. Doc. 14. Defendants filed a motion to dismiss on April 21, 2014. Doc. 17. Plaintiffs filed their opposition on May 13, 2014 and Defendants filed their reply on May 20, 2014. Docs. 20 and 22.

### III. STANDARD OF DECISION

#### A. **12(b)(6) Failure to State a Claim**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Iqbal,* 566 U.S. at 677.

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility for entitlement to relief." *Id*. (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

5

factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Thus, "bare assertions ... amount[ing] to nothing more than a formulaic recitation of the elements ... are not entitled to be assumed true." *Iqbal*, 566 U.S. at 698.

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

## IV.  DISCUSSION

### A.  Violation of Labor Code §1102.5

In the first cause of action Plaintiffs claim that Defendants violated Cal. Labor Code §1102.5 when they retaliated against Plaintiffs for speaking out on a matter of public concern.  Doc. 14 at 12.  The relevant section of §1102.5 provides:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

As Defendants are public entities and officials, the Cal. Labor Code §1102.5 claim is governed by the California Tort Claims Act (CTCA).  *See* Cal. Gov. Code §910 *et seq.*  The CTCA requires that plaintiffs present a written claim to authorities within six months of the cause of actions which includes the following:

> (a) The name and post office address of the claimant.

    (b) The post office address to which the person presenting the claim desires notices to be sent.
    (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.
    (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.
    (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.
    (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.

Cal. Gov. Code §910.  A CTCA claim must "allege facts demonstrating or excusing compliance with the claim presentation requirements." *Butler v. Los Angeles Cnty.* 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).  This allows the government to take notice of the claim and when possible settle the matter without litigation. *Ovando v. City of Los Angeles*, 92 F. Supp. 2d 1011, 1021 (C.D. Cal. 2000). Compliance with the CTCA is a condition precedent to a plaintiff maintaining an action against the state for a tort and thus an essential element of the plaintiff's case. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209(2007).  Under California law, failure to allege facts either demonstrating or excusing compliance with the CTCA subjects a complaint to dismissal for failure to state a claim. *Chacon v. Hous. Auth. of Cnty. of Merced*, 2011 WL 2621313 (E.D. Cal. June 29, 2011).  *See also*, *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1237 (2004) (the failure to comply with the CTCA "bars the plaintiff from bringing suit against that entity.")

    In their motion to dismiss, Defendants allege that Plaintiffs failed to report sufficient facts to meet the requirements of the CTCA.  Doc. 17 at 7.  Plaintiffs respond that the Claim Form submitted substantially complies with all the statutory elements of the CTCA.  Doc. 20 at 1-2.  To substantially comply with the CTCA, "the face of the filed claim [must disclose] sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." *Gen. Sec. Servs. Corp. v. Cnty. of Fresno*, 815 F. Supp. 2d 1123, 1133 (E.D. Cal. 2011). Thus the factual basis for recovery of each claim must be fairly reflected in the written claim form, prior

7

to filing suit. *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004). Plaintiffs present various unrelated incidents in their CTCA claim form. These incidents vary from verbal altercations with other officers, to reporting on misconduct within the station, to failing to notify Plaintiffs after a witness named him in open court, to being followed by fellow officers for no apparent reason. Most of these incidents do not contain dates or names of the officers involved. Furthermore, on the form Plaintiffs claim that they are subject to a hostile work environment but make only passing reference to any actions which would be considered protected speech. Indeed, it is unclear what actions the Plaintiffs claim led to the retaliatory conduct. The factual underpinnings of their claims are not clearly reflected.

To sufficiently fulfill the requirements of Cal. Gov. Code §910, the content of a CTCA claim must make it "readily discernible" the "assertion of a compensable claim." *Green v. State Ctr. Cmty. Coll. Dist.*, 34 Cal. App. 4th 1348, 1358 (1995). Although Plaintiffs submitted a Claim Form on or about December 12, 2012, the form failed to clearly state what claims they intended to pursue if a resolution could not be found. Nor was it clear from the facts presented what cause of actions the Plaintiffs intended to pursue, because the facts were not presented in a logical manner. The entity to which the CTCA form was submitted must be able to determine what type of claim a plaintiff intends to bring. *Haar v. City of Mountain View*, 2010 WL 4919478 (N.D. Cal. Nov. 12, 2010). For example, in *Haar*, the court dismissed Plaintiff's complaint because the "defendants have no way of knowing [from the CTCA form] whether they are charged with negligence, battery, intentional infliction of emotional distress, or some other claim. Accordingly, the allegations are not sufficient to provide fair notice or to state a claim upon which relief may be granted." Here, it is unclear whether plaintiffs intended to pursue a claim of retaliation, hostile work environment, wrongful termination or harassment. Elements of each of these claims are presented in part, however, none are fully explored. Therefore, as in *Haar*, the allegations are not sufficient to provide fair notice.

Additionally, a plaintiff cannot base claims subject to the CTCA on facts arising after the claim was filed. Any claims based on incidents that occurred after a claim is filed must be dismissed as

8

"defendants would have had no notice and no reason to investigate acts occurring after that date in order to assess their potential liability for those acts." *Sandoval v. Merced Union High Sch.*, 2006 WL 1171828 (E.D. Cal. May 3, 2006). *See also, Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434, (Cal. Ct. App. 1988) (Barring the addition of claims which were not including in the CTCA filing). Plaintiffs submitted their CFTCA claim to the City of Tehachapi on December 31, 2012. In the SAC, Plaintiffs allege incidents that occurred in both 2013 and 2014. Any incidents in 2013 and 2014 could not form the basis of a CTCA claim.

Finally, Plaintiffs' original claim form was deemed to be insufficient by the City of Tehachapi, the entity to which it was submitted. The City of Tehachapi in a letter to Plaintiffs' attorney, sent on or about January 10, 2013, clearly stated the deficiencies in the claim and gave Plaintiffs an opportunity to amend. Plaintiffs failed to act on this opportunity.

The Court therefore GRANTS Defendants' motion to dismiss Plaintiffs' first cause of action.

**B.** **Violation of 42 U.S.C. § 1983**

In their second cause of action, Plaintiffs claim that Defendants retaliated against Plaintiffs for speaking out on a matter of public concern, thereby violating Plaintiffs' right to freedom of speech and 42 U.S.C. § 1983. Doc. 14 at 13. Defendants argue that Plaintiffs' SAC failed to allege sufficient facts to establish municipal liability; Plaintiffs' claims are time-barred; and that Plaintiffs fail to allege the required elements for a §1983 First Amendment retaliation claim. Doc. 17.

**1.** **Elements of § 1983 First Amendment Retaliation Claim**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Where a public employee is claiming that his first amendment rights have been violated, the Court applies a five step test to balance the government's rights as an employer and the Plaintiff's rights as a citizen, pursuant to which the Court must determine:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). "A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Garcetti v. Ceballos*, 547 U.S. 410, 418, (2006).

### a. Matters of Public Concern

Only matters of public concern are entitled to protection. To determine whether the plaintiffs are speaking on matters of public concern, the court looks to the content, form, and context of their statements. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013). Here, Plaintiffs recount several separate, unrelated incidents of speech, the majority of which relate to their treatment by other officers or the conduct of other officers. For the purposes of efficiency, the Court will tackle a large number of Plaintiffs' allegations together.

Speech which is limited to "individual personnel disputes and grievances" and "would be of no relevance to the public's evaluation of the performance of governmental agencies" is clearly not a matter of public concern. *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). Similarly, speech which is related to an "employee's bureaucratic niche" or "internal power struggles within the workplace" are not matters of public concern. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Circ. 2009). The majority of the incidents reported by Plaintiffs, including discussions of improperly recorded timesheets, critiques of Plaintiffs' work performance, and reports of disputes with other officers, are not matters of public concern. Other aspects of the complaint completely fail to meet the public concern standard (e.g., Graff's allegation that he found marijuana on his desk Doc. 14 at 9, or Disney's allegation that his supervising officer taunted him in front of a civilian victim Doc. 14 at 5). In addition, unlike in *Robinson v. York*, 566 F.3d 817, 822-23 (9th Cir. 2009), where the plaintiff

presented a case of "systematic discrimination and harassment" related to anti-Semitic behavior, the Plaintiffs have failed to present a unifying theme of misconduct, other than their own internal disputes with fellow members of the police force. "The reality that poor interpersonal relationships amongst coworkers might hamper the work of a government office does not automatically transform speech on such issues into speech on a matter of public concern." *Id*. In contrast, "[t]he competency of the police force is surely a matter of great public concern." *McKinley*, 705 F.2d at 1114. Given the confusing and disorganized nature of the complaint, it is not practicable for the Court to evaluate every allegation under this standard. However, it is not necessary for the Court to do so, because the remaining allegations fail to state a claims for other reasons, as discussed below.

### b. Speech as a Private Citizen or Public Employee

The second part of the test requires the Court to determine whether plaintiff is speaking as a private citizen or a public employee. To determine this, the Court looks to content and context of his speech.

> Particularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties. When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties.

*Dahlia v. Rodriguez*, 735 F.3d 1060, 1074 (9th Cir. 2013). Plaintiffs base their § 1983 claim on comments they made both to their Commanding Sergeant and the Chief of Police, as well as comments they made outside the chain of command to members of the City Council, the Mayor and the City Manager. "When a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." *Id*. Thus, when Plaintiffs complained about the conduct of their fellow officers to Sergeant Paille or Chief Kermode, they were speaking as public employees and not private citizens.

Furthermore, "statements are made in the speaker's capacity as a citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform." *Eng*, 552 F.3d at 1071. Thus, when the speaker had a duty to

11

make the statements, he is speaking a public employee and not a private citizen. In the SAC, Plaintiffs imply that officers had a duty to report the misconduct of other officers as part of their responsibilities as police officers. When they themselves undertake such reporting, they do so not as private citizens, but as members of the police force. Additionally, "if the public employee was paid for the speech – e.g., drafting a memorandum, creating a report, advising a supervisor—then that compensation might be indicative of the nature of the speech." *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1071 (9th Cir. 2012)(internal citations and quotation marks omitted). For example, Sergeant Paille instructed Plaintiffs to monitor Sergeant Empey and report back on his timekeeping. Thus these reports were made at the direction of Plaintiffs' superior as part of their regular duties, and are therefore not protected speech.

All speech made within the chain of command was made pursuant to Plaintiffs' role as public employees and therefore is not protected. After eliminating allegations based upon speech within the chain of command, the only remaining claims are those based on speech made by Plaintiffs to members of the City Council and the City Manager, which will be analyzed further below.

### c. Adverse Action/Substantial or Motivating Factor

The third step places the burden on the plaintiff to show that there was adverse action taken against him and that the "speech was a 'substantial or motivating' factor in the adverse action." *Eng*, 552 F.3d at 1072.

#### 1. Adverse Action

In determining whether conduct amounts to an adverse action, the court asks whether "the exercise of the first amendment rights was deterred" by the government employer's action." *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003) (internal citations and quotation marks omitted). To be considered an adverse action, Plaintiffs must "demonstrate the loss of a valuable government benefit or privilege…mere threats and harsh words are insufficient." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998)(internal citations and quotation marks omitted). In *Nunez*, the court held that verbal threats from fellow offers were not enough for the plaintiff's claims to "survive [the] threshold

inquiry." *Id*. Therefore, threats such as the one Chief Kermode allegedly made in July 2010 to begin an investigation do not rise to the level of adverse action. Similarly, informal critiques of Plaintiffs' job performance, such as rejecting submitted police reports or yelling at Plaintiffs in the squad room, do not constitute the loss of a valuable government benefit. The Court has reviewed the entire SAC and concludes that Disney has alleged the following adverse actions: being placed on administrative leave, having the use of his service vehicle revoked, losing his five percent merit increase and his extra pay due for Field Training, and being made the subject of an internal affairs investigation. Additionally, Graff has alleged the following adverse actions: receiving a recommendation that his employment be terminated, having the use of his service vehicle revoked, losing his five percent merit increase, and being removing as the head of the Reserve Officer Training Program.

## 2. **Substantial or Motivating Factor**

The Court now turns to examining whether Plaintiffs have alleged sufficiently whether any protected speech was a substantial or motivating factor in the remaining alleged adverse actions. To show that the alleged protected speech was a substantial or motivating factor in the adverse action taken against him, a plaintiff may

> (1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual.

*Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 750 (9th Cir. 2010).

### a. Claims Made by Disney

Disney can establish that his speech was a substantial motivating factor in any adverse action taken against him if he provides evidence of proximity in time between the speech and the adverse action. There is no "mechanically applied criterion" which would allow the court to determine whether a specific time period would allow a jury to infer that an action was retaliatory. *Coszalter*, 320 F.3d at 977.

> Retaliation often follows quickly upon the act that offended the retaliator, but this is not always so. For a variety of reasons, some retaliators prefer to take their time: They may

> wait until the victim is especially vulnerable or until an especially hurtful action becomes possible. Or they may wait until they think the lapse of time disguises their true motivation…There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation.

*Id.* at 978.  In August and September of 2011, Disney engaged in protected action when he spoke with the City Manager and a member of City Council about the conduct of his fellow officers and their failure to properly investigate allegations of wrongdoing within the police department.  Disney was reprimanded by Chief Kermode in March 2012 for initiating an internal investigation of his fellow officer.  In May 2012, Disney received a letter informing him that he was being put on administrative leave for leaving his post early after responding to a call for emergency medical care, however, the day of the incident Chief Kermode had approved of Disney's leave.  A few weeks later, in June 2012, Disney had to surrender his badge and gun and the use of his service vehicle was suspended.  Sometime between February and July 2012, Disney was informed that he would not be receiving his merit increase nor would he receive payment for his training as a Field Officer.  In August 2012, Kermode told Disney he was subject to an internal affairs investigation for making false or disparaging statements about fellow officers.  Although these events happened over the course of a year following Disney's protected speech, "in light of the timing and surrounding circumstances" and the fact that the first asserted adverse action occurred within six months of the protected speech, a finder of fact could infer from temporal proximity that Chief Kermode's actions were motivated to deter Disney's first amendment rights. *Coszalter*, 320 F.3d at 977.

Alternatively, Disney can establish that his speech was a substantial motivating factor in any adverse action taken against him if he provides direct evidence that his employer opposed his protected speech.  In both March and August 2012, Chief Kermode reprimanded Disney for speaking out against fellow officers.  Doc 14 at 9 and 11.   In August, Chief Kermode even went so far as to inform Disney that he was the subject of an internal investigation for speaking disparagingly about fellow officers. Doc 14 at 11.   Given the timing of these comments and viewing the evidence in a light most favorable to

14

Disney, a finder of fact could conclude that Disney has presented direct evidence of opposition to Disney's protected speech to the City Counsel. *Coszalter*, 320 F.3d at 977

### b. Claims Made by Graff

One of the first instances of adverse action against Graff occurred in June 2011, when Officer Christian submitted a memorandum recommending that Graff's employment be terminated. This occurred prior to Officer Graff engaging in any protected speech and therefore cannot have been motivated by retaliation.

Graff has, however, alleged that additional adverse actions taken against him came shortly after he spoke with City Councilmembers as well as immediately before Chief Kermode gave a speech to a group of officers threatening them with insubordination should they complain to anyone aside from their supervising officer. Doc. 14 at 10. Graff alleged that less than a month after he spoke with City Councilmembers in June 2012 about the misconduct of his fellow police officers, his supervisor expressed opposition to his speech, his service vehicle was taken away, he was not given his five percent merit increase, and he was removed as director from the Reserve Officer Training Program. Based on these facts a jury could infer a retaliatory motive. *Coszalter*, 320 F.3d at 977

### d. Adequate Justification

Should Plaintiffs meet the first three prongs of the tests, the burden shifts to Defendants. The fourth part of the test asks, "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Eng*, 552 F.3d at 1072. These are factual issues not readily determined at the pleadings stage. *See Lopez v. Fresno City Coll.*, 2012 WL 844911, *9 (E.D. Cal. Mar. 12, 2012).

### e. Adverse Action Absent Protected Conduct

Finally, if the government cannot meet the fourth prong of the test, it can in the alternative show that it would have taken the adverse employment action against the plaintiff absent the protected conduct. *Eng*, 552 F.3d at 1072. As with the adequate justification issue, this is a factual issue not usually resolved at the pleading stage. *See Lopez*, 2012 WL 844911 at *9.

In sum, both Graff and Disney have a surviving First Amendment retaliation claim under § 1983. Disney has a surviving claim based upon his August and September 2011 communications with City Councilmembers and the City Manager, which allegedly resulted in his being put on administrative leave, losing the use of his service vehicle, being denied his five percent merit increase and extra pay for Field Training, and being the subject of an internal affairs investigation. Graff has a surviving claim based on his June 2012 communications with City Councilmembers, which allegedly resulted in him being denied the use of his service vehicle, his five percent merit increase and being removed as the head of the Reserve Officer Training program.

**2. Statute of Limitations for a 42 U.S.C. §1983 Claim**

"Actions brought pursuant to 42 U.S.C. §1983 are governed by the state statutes of limitations for personal injury actions." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). In California, personal injury actions must be filed within two years of the wrongful act. Cal. Civ. Proc. Code §335.1. Although much of the harassment which Disney and Graff suffered took place prior to 2012, the actual injury did not occur until May and August 2012 and June and July 2012 respectively, when the Plaintiffs were put on leave, denied their merit increases, investigated by internal affairs, removed as the head of the Reserve Officer Training, and lost use of their service vehicles. Plaintiffs filed their initial claim on or about July 24, 2013, well within the statute of limitations. Defendants mischaracterize Plaintiffs' claims regarding relating back to previous incidents. Even if prior harm, such as the harassment, would fall outside the statute of limitations, the adverse actions discussed above (e.g., loss of merit increases, being put on administrative leave, losing control of the training program, and being investigated) occurred well within the statute of limitations. Therefore, Defendants failed to show Plaintiffs' § 1983 claims are untimely.

**3. Municipal Liability Under 42 U.S.C. §1983**

In addition to naming individual defendants in their § 1983 claim, Plaintiffs also name the City of Tehachapi as a Defendant. Doc. 14. The United States Supreme Court has held that a municipality or local government maybe be liable under 42 U.S.C. §1983 if it subjects a person or causes a person to be

subjected to a deprivation of his rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). This liability, however, is limited to actions of the government. Therefore, governments cannot be held vicariously liable for their employees' actions. *Id*. To show that the injury was caused by the government, a plaintiff must prove that the injury was caused by official municipal policy, such as "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id*.

There are three ways to establish municipal liability. A plaintiff can show, a "long standing practice or custom which constitutes the standard operating procedure of the local government entity;" that "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision," or that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002). Plaintiffs allege that the decisions and actions of the Chief of Police and their superior officers which caused them harm were ratified by the City Council and City Manager or, alternatively, that the Chief of Police had been delegated the authority to impose discipline. Doc. 20 at 10. The Defendants contend that the City Manager was the final decision maker regarding matters of personal action within the Police Department. Doc. 17 at 12.

"To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). (internal citations and quotations omitted). Plaintiffs allege that they informed various City Councilmembers and the City Manager of the retaliatory conduct taken against them. Although the details of these conversations were not contained in the pleadings, viewing the facts in the light most favorable to Plaintiffs, it is plausible that the basis for the retaliatory conduct was also related to the City Councilmembers and City Manager. Knowledge of a policy, however, is not enough to infer ratification. Rather for ratification to occur, an official must make a "deliberate choice to follow a course of action" from various alternatives. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992).

Merely allowing a course of action to continue does not constitute a deliberate choice. *Id*.

Alternatively, the Plaintiffs suggest that the Chief of Police was "delegated final policy making authority." *Christie*, 176 F.3d at 1238. According to the Tehachapi Municipal Code Administration and Personnel Code, Tehachapi employees, including police officers, have the right to appeal disciplinary actions and violations of the Administration and Personnel Code, to the City Council. Doc. 17-2 at 26. "Delegating discretion is not equivalent to delegating final policymaking authority." *Id*. Here, the pleadings indicate appears as though the Chief of Police was delegated discretionary power but not final policymaking authority. *Id*. Therefore, the City is not liable for his actions.

Defendants' motion to dismiss against the City of Tehachapi is GRANTED.

**4. Leave to Amend.**

Plaintiffs were warned in the March 10, 2014 Order on Defendants' motion to dismiss the First Amended Complaint that they would not have another chance to amend their complaint. Doc. 13 at 8. Based on the Court's reading of the instant allegations (factual and legal) the most recent pleading cannot be cured on the facts alleged and argued. Therefore, no further amendments will be permitted.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court:

1. GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' first cause of action under Cal. Lab. Code § 1102.5;

2. GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss the second cause of action pursuant to § 1983 claim as to the City of Tehachapi; and

3. GRANTS IN PART AND DENIES IN PART as set forth above Defendants' motion to dismiss the second cause of action pursuant to § 1983.

IT IS SO ORDERED.

Dated:  **July 11, 2014**            **/s/ Lawrence J. O'Neill**
                                      UNITED STATES DISTRICT JUDGE

4.